1  Jeffrey D. Wexler, State Bar No. 132256
   PILLSBURY WINTHROP SHAW PITTMAN LLP
2  725 South Figueroa Street, Suite 2800
   Los Angeles, CA 90017-5406
3  Telephone: (213) 488-7129
   Facsimile No.: (213) 629-1033
4  jeffrey.wexler@pillsburylaw.com

5  Michael E. Bubman, State Bar No. 143468
   MIRMAN, BUBMAN & NAHMIAS, LLP
6  21860 Burbank Boulevard, Suite 360
   Woodland Hills, CA 91367
7  Telephone: (818) 451-4600
   Facsimile: (818) 451-4620
8  mbubman@mbnlawyers.com

9  Attorneys for Plaintiffs and Counterdefendants
   Dependable Solutions, Inc., Dependable
10 Rights, Ltd., and Martin Malysz

11                    UNITED STATES DISTRICT COURT

12                   CENTRAL DISTRICT OF CALIFORNIA

13                          WESTERN DIVISION

14 _____

15 DEPENDABLE SOLUTIONS, INC.,         )   Case No. CV 15-7481 JFW (KLSx)
   a California corporation;           )
16 DEPENDABLE RIGHTS, LTD., a          )   **FIRST AMENDED COMPLAINT**
   United Kingdom private limited      )   **FOR RESCISSION BASED ON**
17 company; and MARTIN MALYSZ,         )   **FRAUD IN THE INDUCEMENT**
                                       )
18              Plaintiffs,            )   **DEMAND FOR JURY TRIAL**
                                       )
19        v.                          )
                                       )
20 ZELJKO RAKOCEVIC, an                )
   individual; WESTEND SOFTWARE,       )
21 INC., a California corporation; DOES )
   1 through 20, Inclusive,            )
22                                     )
              Defendants.              )
23 _____     )
                                       )
24 AND RELATED CROSS-                  )
   COMPLAINT                           )
25 _____     )

26

27

28

4825-9572-5353.v4

Plaintiffs Dependable Solutions, Inc., Dependable Rights, Ltd., and Martin Malysz (collectively, "Plaintiffs") allege as follows:

## BACKGROUND FACTS

1.     Plaintiff Dependable Solutions, Inc. ("DSI") is, and at all times mentioned was, a California corporation with a principal place of business in Los Angeles County, California.

2.     Plaintiff Dependable Rights, Ltd. ("Dependable Rights") is a United Kingdom private limited company. Dependable Rights is a wholly owned subsidiary of DSI, and is a party to certain contracts at issue in this litigation. For that sole reason, Dependable Rights is a party herein.

3.     Plaintiff Martin Malysz ("Malysz") is an individual who at all times relevant hereto resided in the City and County of Los Angeles.

4.     Plaintiffs are informed and believe, and thereon allege, that Defendant WestEnd Software, Inc. ("WestEnd") is, and at all times mentioned was, a California corporation with a principal place of business in Los Angeles County, California.

5.     Plaintiffs are informed and believe, and thereon alleges, that Defendant Zeljko Rakocevic ("Zeljko") is an individual who all times relevant hereto resided in the City and County of Los Angeles. Plaintiff is informed and believes and thereon alleges that Zeljko was born in what is now Serbia, is the sole shareholder of defendant WestEnd, and exerts sole and exclusive management and control over that entity. Defendants WestEnd and Zeljko are hereafter collectively referred to as the "WestEnd Defendants."

6.     Plaintiffs are currently unaware of the true names and identities of defendants, Does 1-20, and therefore sues such defendants by their fictitious names. Plaintiffs will amend this complaint when their true names and identities are ascertained.

7.     Plaintiffs are informed and believe and thereon allege that each of the defendants is or was the agent, employee, partner, joint venturer, spouse, or domestic

partner of the other defendants and that each of the defendants was acting within the course and scope of said agency, employment, partnership, joint venture, or on behalf of the community property of his/her spouse or domestic partner in doing the things alleged herein.

8.    In 2005 Malysz founded DSI.  DSI was formed to provide a suite of software applications that automate contract management, financial, royalty and creative operations through web-based solutions for licensors, agents and licensees of consumer products.

9.    DSI has become the recognized leader in consumer products rights licensing software.  DSI's program suite, called "Dependable Rights Manager" or "DRM," was launched in 2005.

10.    Pursuant to a June 29, 2007 letter agreement from DSI, countersigned by Zeljko on July 17, 2007, DSI hired Zeljko as Director of Development, an at-will, full-time salaried position.  On July 17, 2007, Zeljko signed a DSI Employee Proprietary Information Agreement in which he agreed that, *inter alia*: "Any work produced during my period of employment at Dependable Solutions, Inc. will be considered 'work for hire.'  All rights associated with such work will be completely (100%) owned by Dependable Solutions, Inc."  Zeljko initially supervised the existing staff of three programmers and was tasked with upgrading the DRM suite of software applications.

11.    By approximately early 2008 Zeljko had replaced all the American programmers with Serbian staff programmers.  These new programmers reported exclusively to Zeljko and were supervised directly by him as Director of Development at DSI.

12.    Zeljko requested that some of the Serbian programmers be paid part of their salaries through WestEnd to take advantage of certain alleged tax benefits related to his status as a Serbian national.  Zeljko also requested that a portion of his DSI salary be paid to WestEnd for the same reasons.  However, Zeljko and the

Serbian programmers were at all times staff employees of DSI. WestEnd was a mere conduit for partial payments by DSI to Zeljko and the Serbian programmers.

13.    During Zeljko's employment at DSI from August 2007 through the end of May 2014, all software programming he participated in was done within the scope of his employment at DSI. Likewise, all software programming done by the Serbian programmers was done within the scope of their employment with DSI. All software programming done by Zeljko and the Serbian programmers was a work-for-hire by DSI and is owned by DSI, and DSI holds all copyrights thereto. This includes all updates and versions of the DRM software programmed through and by Zeljko and the Serbian programmers.

14.    In 2012 Zeljko and Malysz entered into negotiations regarding transferring a 50% share of ownership in DSI from Malysz to Zeljko. Beginning in approximately August 2013 serious discussions and negotiations began between the parties which continued on and off through 2014. In approximately March of 2014 an accounting firm was engaged to compile financial and accounting information for use of the parties in trying to come to an agreement to share ownership of DSI. No agreement regarding joint ownership was ever reached.

15.    During the period from March through May 2014, and on prior occasions, DSI had demanded that Zeljko provide DSI with a copy of the source code to the DRM software, to place it into escrow as required by contracts with customers, and to provide all passwords and access codes to allow other employees of DSI to access, use and support the source code. Zeljko continually refused those demands.

16.    Plaintiffs are informed and believe that Zeljko intentionally retained sole access and control of the source code to use as leverage to try to obtain a 50% interest in DSI on terms favorable to him and unfavorable to Malysz. On a number of occasions in the Spring of 2014 Zeljko threatened to quit DSI, to keep the source code for himself, to prevent the DRM software from operating, and to make

defamatory remarks to DSI customers with the express intent to destroy Malysz and DSI.

17.    When negotiations over possible joint ownership were breaking down in the Spring of 2014, the parties turned their negotiations toward Zeljko's separation from DSI, obtaining possession and control of the source code, obtaining a release of any and all of Zeljko's claims, and obtaining a commitment from Zeljko not to compete with DSI for at least two years.

18.    During the last days of negotiations leading up to the Settlement Agreements Zeljko represented, for the very first time, that three binary subprograms included in DRM had been personally developed by him prior to working at DSI and, thus, that they were not works for hire belonging to DSI.  (Those three programs (the "WS .dll Files") have the file extension ".dll" and are identified in Section 1.3 of the License Agreement contained in Exhibit "1" hereto as WS.Framework.dll, WSWebUI.dll, and WSCompArtWebUI.dll.)  Those representations were made by Zeljko, individually and through his counsel, Robert Conrad, to Plaintiffs, through Malysz and Plaintiffs' counsel Chris Halling and Christopher Adishian.  At about the time of the Settlement Agreements, Zeljko told DSI's programmers that he had obfuscated the WS .dll Files.

19.    Because of the demands and threats of Zeljko, DSI was faced with the Draconian choice of agreeing to the buyout terms demanded by Zeljko, or facing the real threat that he would destroy the company.

20.    In May 2014, Plaintiffs and the WestEnd Defendants entered into an integrated set of agreements to, among other things, allows Plaintiffs to obtain possession and control of the DRM source code and buy out and obtain a release of all of Zeljko's claims.  A copy of those agreements (consisting of a master agreement, a Bill of Sale and Assignment, a License Agreement, and an Employment Agreement (collectively the "Settlement Agreements")) is attached hereto, marked as Exhibit "1," and incorporated herein.  The purpose of the Settlement Agreements

1  was to buy Zeljko out of any claim to the business, to obtain his covenant not to

2  compete with DSI, to obtain a transfer and assignment of all of Zeljko's claims, to

3  obtain the DRM source code and intellectual property associated therewith, and to

4  pay Zelkjo over $1,100,000.

5      21.    DSI has recently determined that Zeljko's representations respecting the

6  three WS .dll Files were false.  The true facts are that the three WS .dll Files are

7  nothing more than DSI's software, Component Arts development framework from

8  Datazen licensed by DSI, and Microsoft development code licensed by DSI through

9  its Microsoft channel partnership, all developed or licensed by DSI from 2005

10  through 2014, repackaged, assembled and obfuscated by Zeljko to appear to be

11  WestEnd software.

12      22.    Neither DSI nor anyone else acting on DSI's behalf has decrypted, de-

13  obfuscated, or used code-breaking software on the "WestEnd Software," defined in

14  the License Agreement as the three WS .dll Files and a DNG software program

15  created by Zeljko pursuant to a May 7, 2014 Software Agreement between Zeljko

16  and DSI.  To the contrary, there were unencrypted, unobfuscated versions of the

17  three WS .dll Files on DSI's test servers, saved there by Zeljko in May 2014, while

18  he was an employee of DSI, without encrypting or scrambling the source code.  On

19  May 27, 2015, the day before the Settlement Agreements were signed, DSI

20  discovered those unencrypted, unobfuscated versions of the three WS .dll Files on

21  DSI's test servers and decompiled those files.

22      23.    In the course of fixing bugs that traced back to the three WS .dll files

23  during the months following the execution of the Settlement Agreements, DSI

24  determined that: (a) two of the WS .dll Files first appeared on DSI's servers in 2014,

25  at which time similarly named DRM .dll files stopped being used; and (b) the three

26  WS .dll Files were functionally equivalent to DSI's original DRM .dll files (because

27  the code worked perfectly if the original DRM .dll files were installed and the WS

28  .dll Files were removed).  Accordingly, DSI concluded that the three WS .dll Files,

which Zeljko claimed to have personally developed prior to coming to work for DSI in 2007, in actuality are comprised of components of DSI's DRM software developed during Zeljko's employment at DSI as a work for hire.

### FIRST CLAIM FOR RELIEF

### (for Rescission Based upon Fraud in the Inducement)

### (By All Plaintiffs as Against All Defendants)

24.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 23, and incorporate them by reference as though fully set forth herein.

25.    The WestEnd Defendants, and each of them, induced DSI to enter into the Settlement Agreements by representing, in April 2014, and during the time the Settlement Agreement was negotiated, that the three WS .dll Files included in DRM had been personally developed by Zeljko prior to working at DSI and, thus, that they were not works for hire belonging to DSI.

26.    These representations were false, and were known by the WestEnd Defendants to be false at the time they were made.  The true facts were that the three WS .dll Files included in DRM were nothing more than DSI's software, developed by DSI from 2005 through 2014, in addition to Component Art framework software and Microsoft development code licensed to DSI, repackaged, assembled and obfuscated by Zeljko to appear to be WestEnd software and that, as a result, the three WS .dll files were works for hire belonging to DSI.

27.    The foregoing misrepresentations were made with the intention of inducing Plaintiffs to rely thereon and to enter into the Settlement Agreements.

28.    Plaintiffs were ignorant of the falsity of the WestEnd Defendants' misrepresentations, and entered into the Settlement Agreements as a direct result of those representations, and further made substantial payments to the WestEnd Defendants in excess of $873,000 in reliance thereon in order to, among other things, secure the right to use the three WS .dll Files.  Had Plaintiffs known of the falsity of the WestEnd Defendants' representations, and, in particular, that the three WS .dll

Files had not been personally developed by Zeljko prior to working at DSI (and that they thus belonged to DSI as works for hire), Plaintiffs would not have entered into the Settlement Agreements.

29.    As a result of their reasonable reliance upon Defendants' false representations, Plaintiffs have been damaged in an amount to be proven at trial but in excess of $873,000.

30.    The actions of the WestEnd Defendants described herein were taken with substantial certainty that such acts would cause harm to Plaintiffs, in conscious disregard for the rights of Plaintiffs and by conduct that was despicable and done with malice and ill-will and intent to harm Plaintiffs, such as to constitute oppression, fraud, malice, and despicable conduct under Cal. Civ. Code § 3294, entitling Plaintiffs to exemplary damages in an amount appropriate to punish and set an example of Defendants.

31.    Plaintiffs will suffer substantial harm if the Settlement Agreements are not rescinded.

32.    Plaintiffs intend the service of this First Amended Complaint to serve as notice of rescission of the Settlement Agreements, and hereby demand that Defendants restore to Plaintiffs the consideration furnished by Plaintiffs to Defendants pursuant to such Agreements, specifically the more than $873,000 paid by Plaintiffs pursuant to such Agreements, and offer to return anything of value that Plaintiffs received under such Agreements.

33.    Plaintiffs are entitled to a constructive trust over the monies that they paid Defendants as a result of Defendants' fraud, and all proceeds therefrom.

## **PRAYER**

WHEREFORE, Plaintiffs Dependable Solutions, Inc., Dependable Rights, Ltd., and Martin Malysz pray for judgment against Defendants, and each of them, as follows:

4825-9572-5353.v4

7

1.  For rescission of the Settlement Agreements, and for return to Plaintiffs of all monies paid in connection with such Agreements, in an amount to be proven at trial, but in no event less than $873,000;

2.  For a constructive trust over all monies acquired by Defendants from Plaintiffs, and all proceeds therefrom;

3.  For punitive damages in an amount to be established at the time of trial;

4.  For reasonable attorneys' fees to the extent allowed by statute or contract;

5.  For costs and expenses of suit; and

6.  For such other and further relief as the Court deems just and proper.

Dated:  October 16, 2015

PILLSBURY WINTHROP SHAW PITTMAN LLP
Jeffrey D. Wexler

MIRMAN, BUBMAN & NAHMIAS, LLP
Michael E. Bubman

By:    /s/ Jeffrey D. Wexler
Jeffrey D. Wexler, Attorneys for Plaintiffs
Dependable Solutions, Inc., Dependable
Rights, Ltd. and Martin Malysz

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs Dependable Solutions, Inc.,  Dependable Rights, Ltd., and Martin

3

Malysz demand trial by jury on all issues triable at law.

4

5    Dated:  October 16, 2015

6                                                          PILLSBURY WINTHROP SHAW PITTMAN LLP
                                                           Jeffrey D. Wexler

7                                                          MIRMAN, BUBMAN & NAHMIAS, LLP
                                                           Michael E. Bubman
8

9                                                          By:    /s/ Jeffrey D. Wexler
                                                                  Jeffrey D. Wexler, Attorneys for Plaintiffs
10                                                                Dependable Solutions, Inc., Dependable
                                                                  Rights, Ltd. and Martin Malysz
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9