1  Robert N. Conrad, SBN 055093
   ROBERT NOLAN CONRAD,
2  A LAW CORPORATION
   1901 Avenue of the Stars
3  Suite 1100
   Los Angeles, California 90067
4  (310) 557-2001
   (310) 557-2033 (Fax)
5  robert@conradlawfirm.com

6  Attorney for Defendant Zeljko
   Rakocevic and Defendant and
7  Cross-complainant WestEnd Software, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

| 11 | DEPENDABLE SOLUTIONS, INC., etc., et al., | ) | Case No. CV 15-7481-JFW (KSx) |
|---|---|---|---|
| 12 | | ) | FIRST AMENDED COUNTERCLAIM OF WESTEND SOFTWARE, INC. for |
| 13 | Plaintiffs, | ) | |
| 14 | v. | ) | 1. Copyright Infringement and Injunctive Relief |
| 15 | ZELJKO RAKOCEVIC, etc., et al., | ) | 2. Breach of contract |
| 16 | Defendants. | ) | 3. Misappropriation of Trade Secrets |
| 17 | WESTEND SOFTWARE, INC., | ) | DEMAND FOR JURY TRIAL |
| 18 | Counterclaimant, | ) | PTC Date: Sept. 9, 2016 Trial Date: Sept. 27, 2016 |
| 19 | v. | ) | The Hon. John F. Walter, Judge Courtroom 16 |
| 20 | MARTIN MALYSZ, DEPENDABLE SOLUTIONS, INC., | ) | |
| 21 | A CALIFORNIA CORPORATION, DEPENDABLE RIGHTS, LTD., | ) | |
| 22 | TIMOTHY MEDORA, and THE MEDORA GROUP, INC. | ) | |
| 23 | Counter-defendants. | ) | |
| 24 | | ) | |

25

26       Counterclaimant WestEnd Software, Inc. ("WestEnd") alleges:

27                **STATEMENT OF JURISDICTION**

28       1.  This action asserts claims under 17 U.S.C. § 101 et seq. (Copyright

Robert Nolan Conrad, A Law Corporation

Act), and under the statutory and common law of the State of California. The United States District Court Central District of California has jurisdiction over this action by virtue of 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338 (copyrights and unfair competition), 17 U.S.C. § 1203(a) (DMCA violation), and 28 U.S.C. § 1367 (general principles of supplemental jurisdiction).

2. Venue in the United States District Court for the Central District of California will be predicated on 18 U.S.C. § 1965(a) and (b), 28 U.S.C. § 1391(b) and (c), and/or 28 U.S.C. § 1400(a). A substantial part of the events or omissions giving rise to the claims occurred in this district. (The term "and/or" in this Counterclaim means either "and" or "or.")

3. This Court has in personam jurisdiction over Counter-defendants Timothy Medora ("Medora") and The Medora Group, Inc., ("Medora Group"), an Arizona corporation (collectively the "Medora Counter-defendants"), who have committed tortious acts in this district in violation of WestEnd's rights, as alleged herein.

### THE PARTIES

4. Counterclaimant WestEnd is a corporation organized under the laws of the State of California, with its principal place of business in Los Angeles County, California. WestEnd is in the business of writing and licensing computer software for a variety of applications.

5. Counter-defendant Dependable Solutions, Inc. ("DSI") is a California corporation with its principal place of business in the County of Los Angeles, California. Counterclaimant is informed and believes and thereon alleges that Counter-defendant Dependable Rights, Ltd. ("DRL") is a private limited company and a wholly owned subsidiary of DSI and was formed and is doing business in the United Kingdom.

6. Counterclaimant is informed and believes and thereon alleges that at all times herein mentioned Counter-defendant Martin Malysz ("Malysz") is the

Robert Nolan Conrad, A Law Corporation

2

President, CEO and Chairman and sole shareholder of DSI and DRL and resides and has at all times herein mentioned resided in the County of Los Angeles, and at all times herein mentioned has been and is the Chairman, CEO and President of DSI and DRL and that all actions of DSI and DRL, as alleged herein, were authorized by him and/or under his direction and control.

7. Counterclaimant WestEnd is informed and believes and thereon alleges that Counter-Defendant Medora is an individual residing in the State of Arizona and is the President of Counter-defendant Medora Group, a corporation organized and existing under the laws of the State of Arizona, with its principal place of business in Phoenix, Arizona.

## GENERAL AVERMENTS

8. In March 2004, Zeljko Rakocevic ("Rakocevic") formed WestEnd. From 2004 through 2006, WestEnd developed the core, foundational software (the "Core Software"), consisting of about 20,000 lines of code, which covered common parts for use in many types of enterprise software applications, such as file format handling, data conversion, data import and export, and a connection between user interface elements and data, all of which allowed for a vast array of application software to be written requiring similar underlying functions. The Core Software allowed for the quick development of new applications. The Core Software is contained in three binary files referred to in the License Agreement (the "License Agreement") between WestEnd and DSI (Exhibit C to Exhibit 1 [Dkt 69-1] attached to the Third Amended Complaint) named: WS.Framework.dll, WSWebUI.dll and WSCompArtWebUI.dll.

9. Counterclaimant is informed and believes and thereon alleges that in July 2005, Counter-defendant Malysz formed DSI.

10. Malysz and Rakocevic met in or about late 2006. Counterclaimant is informed and believes and thereon alleges that DSI was then a fledgling

Robert Nolan Conrad, A Law Corporation

Robert Nolan Conrad, A Law Corporation

company and was licensing software for the consumer product licensing industry but was encountering significant product quality issues with its software.  In or about early 2007, WestEnd began writing a consumer product licensing application based on its Core Software that would provide much greater functionality than then existing industry software.  Prior to August 2007, a beta version of this application was completed by WestEnd.

11.  In or about August 2007, believing that he and Malysz were 50/50 owners in the business of DSI, Rakocevic became an "employee" of DSI, had DSI stop using all of its prior licensing software, and WestEnd permitted DSI to use only the object code of the Core Software and the application it had developed for consumer product licensing.  Rakocevic then devoted his time and energy to complete the consumer product licensing application, which later became known as the DRM Modules.

12.  The DRM Modules which ran using the Core Software, came to be known together as the Dependable Rights Manager software (the "DRM Software"), which could allow a company to manage and track data regarding its consumer products licensing.  The DRM Modules, as then written and thereafter modified, could not and cannot run or function without the software program source code contained in the Core Software or a derivative thereof.

13.  In or about November 2007, DSI launched the DRM Software.

14.  The DRM Software is primarily marketed to Fortune 500 companies that engage in consumer product licensing of their brand name(s), such as Sony, HanesBrands, NBC-Universal and Rovio Entertainment, which may license their company's brand(s) on clothing, cups, and other consumer products.  The DRM Software was and is primarily used on DSI's computer servers and was and is not marketed for use to or by the general public or consumers and has never been offered without a written license agreement signed by the licensee.

Robert Nolan Conrad, A Law Corporation

15.  Although DSI struggled financially from 2008 until about 2011, and Rakocevic and Malysz at times received no compensation for months, by 2012, DSI, using the DRM Software, became  a leader in licensing software for the consumer products licensing industry.  As DSI continued its success into 2013, by adding new clients, Malysz began to make important business decisions without collaborating with Rakocevic and the results of these decisions, in Rakocevic's opinion, were disastrous. Rakocevic believed that DSI needed to meet the high expectations of its growing customer list and that Malysz was having DSI waste money on frivolous purchases, useless marketing investments and hiring incompetent friends at exorbitant salaries (compared to their qualifications).  Malysz refused to allow DSI to hire the required support and technical employees that Rakocevic wanted to successfully support the growing customer base.

16.  Counterclaimant is informed and believes and thereon alleges that in early 2014, Malysz became more unprofessional and incompetent and failed to act in the best interest of DSI's clients and claimed for the first time that the entire business operation belonged solely to him, that all of the software that WestEnd had developed both during and prior to Rakocevic's employment by DSI belonged solely to DSI, and that he was entitled to run the business as he saw fit instead as the collaborative effort that had existed for years between him and Rakocevic.  This led to the break-up of the business relationship between Rakocevic and Malysz.

17.  In May 2014, Rakocevic, on his own, created specialized software (the "DNG Software") that allowed the Core Software to read and render "on the fly" photographs taken in the digital negative (DNG) format used in digital photography.  DSI acknowledged in writing that Rakocevic owns all rights in the DNG Software.  (Dkt. 69-1, Exhibit 1, p. 43)  On May 27, 2014, Rakocevic assigned all of his rights in the DNG Software to WestEnd.

18.  On May 28, 2014, Rakocevic, Malysz, DSI, DRL and WestEnd entered into a Settlement Agreement  (the "Settlement Agreement"), and some also entered into the written agreements attached as exhibits to the Settlement Agreement.  The Settlement Agreement and the exhibits thereto are all attached as Exhibit 1 to the Third Amended Complaint [Dkt. 69-1] and are incorporated herein by reference.  The Settlement Agreement, including the exhibits attached to it, provides, among other things:

(a)  The "WestEnd Software" means the Core Software and the DNG Software."  (§ 1.14 of the License Agreement, Exhibit C to the Settlement Agreement)

(b)  "WestEnd is the sole and exclusive owner of the WestEnd Software and all patent rights, copyrights, trademarks, trade secret and other intellectual property and proprietary rights therein and related thereto (collectively, the "WestEnd IP")".   "[. . .] DSI shall not have or assert any rights of any nature whatsoever in the WestEnd IP, or challenge in any way WestEnd's ownership rights in any aspect of said WestEnd IP."  (§ 2.1 of the License Agreement)

(c)  Payment by DSI to WestEnd of a minimum license fee (the "Minimum Fee") of $500,000 for a license to use the WestEnd Software, payable $21,712.46 a month through April 28, 2016, and a continuing license fee ("Continuation Fee") of $75,000 a year, payable $17,500 quarterly for every quarter that DSI continued to use the WestEnd Software.

(d)  DSI agreed to pay WestEnd $600,000 to purchase the DRM Modules.

(e)  *So long as DSI paid both the Minimum Fee and the Continuation Fee*, WestEnd would not use the *WestEnd Software* for consumer products licensing.  However, WestEnd was free to develop any other software and market the same to DSI's then existing clients. (emphasis added.) (§ 2.5 of

Robert Nolan Conrad, A Law Corporation

the Licensing Agreement; ¶ 6 of the Employment and Consulting Agreement, Exhibit D to the Settlement Agreement.)

(f) ". . . to the maximum extent permitted under applicable law, DSI will not, and will not allow any third party to, copy, manufacture, rename files of, modify, customize, translate, localize, decompile, disassemble, decrypt, reverse engineer, attempt to derive source code or algorithms from, remove any proprietary notices from, or create any derivative work based on, the WestEnd Software."  (§ 2.6(d) of the License Agreement)

19.  On or about May 8, 2014, WestEnd, as owner, complied in all respects with the Copyright Act and all other laws governing copyright, and secured the exclusive rights and privileges in and to the copyright of the source code to that portion of the Core Software owned by WestEnd and has received from the Register of Copyrights a Certificate of Registration, dated May 8, 2014, and identified as Registration Number TXu 1-895-099 (the "'099 Registration").  The material registered as the '099 Registration is sometimes referred to as the "Copyrighted Works."

20.  Neither WestEnd nor Rakocevic ever disclosed to DSI the source code of the Core Software or the DNG Software, which WestEnd treated as a trade secret belonging to it and controlled DSI's access to the same. In addition to the source code itself, the architecture, structures, and algorithms contained therein were also trade secrets. Although some of the highly redacted source code of the Core Software was included with the registration of the Copyrighted Works, this included code was inconsequential in revealing the trade secrets contained in the WestEnd Software.

21.  WestEnd, in order to maintain its trade secrets in the WestEnd Software, used what is known as obfuscator software – software that uses an encryption algorithm to compile source code into object code in such a way that the source code, if decompiled, would appear scrambled and

7

Robert Nolan Conrad, A Law Corporation

undecipherable.  WestEnd also required that all of the licensing agreements that DSI entered into with third parties required them to acknowledge that the DRM Software was proprietary and that such third parties would not reverse engineer, decompile, disassemble, extract or otherwise derive, the source code or any other ideas, algorithms or procedures from the DRM Software. Third, as provided in the License Agreement, DSI acknowledged that the WestEnd Software was proprietary to WestEnd and that DSI would not take any action to determine the source code or allow others to do so.

22.  Counterclaimant is informed and believes and thereon alleges that in or about June 2014, Malysz, on behalf of DSI, not content on having DSI pay the $17,500 per quarter Continuation Fee for using the WestEnd Software, engaged a group of software programmers, headed by counter-defendants Medora and The Medora Group, and each of them conspired and acted in concert to determine and use all of the source code of the Copyrighted Works and the DNG Software by doing one or more of the following in breach of the License Agreement:

(a)  decompiling and/or disassembling the WestEnd Software to determine the source code and its algorithms;

(b)  copying the source code of the WestEnd Software

(c)  renaming and/or disguising one or more files comprising the WestEnd Software

(d)  modifying and customizing the WestEnd Software source code

(e)  decrypting the WestEnd Software

(f)  creating a  derivative work based on the WestEnd Software

(g)  reverse engineering the WestEnd Software

23.  Counterclaimant WestEnd is informed and believes and thereon alleges that by February 2015, DSI was having financial difficulties, was in debt, had lost a number of its customers, and had not performed promised

services for all of its customers.

24.  On February 18, 2015, DSI gave written notice that it was terminating its license in the WestEnd Software as of February 28, 2015, that it ceased using the WestEnd Software, and that it would stop all further payments to WestEnd of the $17,500 per quarter Continuation Fee.   DSI stated: "DSI hereby certifies that it no longer uses the WestEnd Software for any purpose and all copies have been destroyed or removed from its servers . . . ."  A copy of that written termination notice is attached hereto as Exhibit A.  DSI has not made any payments to WestEnd for the Continuation Fee covering any time after February 28, 2015.

25.  DSI stopped paying WestEnd the Minimum Fee of $21,712.46 per month beginning with the payment that was due on March 28, 2015, and has not paid all or any portion of the Minimum Fee since the payment that was due on February 28, 2015.

26.  Notwithstanding the termination of its license, WestEnd has determined that DSI has decompiled the WestEnd Software and is using the source code of the Core Software along with the DRM Modules because, among other things:

(a)  the DRM Modules cannot run without the source code from the Core Software.  (DSI acknowledged that it is no longer using the WestEnd Software object code.)

(b)  On various websites maintained by DSI for all of its customers, the Core Software places specific codes that are identical to a small amount of the software programming contained in the Copyrighted Works in order for those websites to coordinate their functions with the Core Software. These visible codes, although part of the Copyrighted Works, are a nominal disclosure of the source code, not revealing a trade secret in and of themselves, and are viewable by the general public on the internet.  If the Core Software

Robert Nolan Conrad, A Law Corporation

were no longer operating, as claimed by DSI, then all of these websites of DSI's customers would no longer function; each such website would instead generate an error message, but does not. For example:

(i)  On a website maintained by DSI for Sony at https://sony.dsidrm.com/BroadcastingReqNoReg.aspx, as of the filing of the original Cross-complaint, the Core Software caused to be included part of the Copyrighted Works.  A copy of portions of the Copyrighted Works from that web page are highlighted in yellow on Exhibit B, attached hereto.

(ii)  On at least one website maintained by DSI for the following DSI customers, the same portions of the Copyrighted Works appear as on the Sony website:

(A)  Rovio Entertainment: http://licensing.rovio.com/BroadcastingReqNoReg.aspx

(B)  United States Olympic Committee (USOC) http://www.usocfootagerequest.org/BroadcastingReqNoReg.aspx

(C)  Nintendo: https://nintendo.dsidrm.com/BroadcastingReqNoReg.aspx

(D)  NBCUniversal: https:/licensing.nbcuni.com/BroadcastingReqNoReg.aspx

27.  All of the websites, except for NBCUniversal, containing the Copyrighted Works were and are maintained by DSI and were generated by software operating on DSI's computers.   The website for NBCUniversal containing the Copyrighted Works was created by DSI and was generated by software operating on DSI's computers.  Counterclaimant is informed and believes that  in or about August 2015, Nintendo became a DSI licensee of software containing some or all of the Copyrighted Works.

///

///

Robert Nolan Conrad, A Law Corporation

**FIRST CAUSE OF ACTION**

**(Action for Copyright Infringement against all Counter-defendants)**

**(17 U.S.C. §§ 106 and 501)**

28.  Counterclaimant realleges and incorporates herein by reference all of the allegations contained in paragraph 1 through 27, inclusive.

29.  Counterclaimant is the owner of the Copyrighted Works, which have been duly registered with the U.S. Copyright Office, and accordingly, no portion of such works may be copied or used without authorization or consent of WestEnd.

30.  At no time has WestEnd authorized any of the counter-defendants to use or reproduce any portion of the Copyrighted Works in whole or in part, except as to the binary code files comprising the WestEnd Software licensed by WestEnd to DSI under the License Agreement only from May 28, 2014 through February 28, 2015 and the right to use only the object code of the Copyrighted Works prior to May 28, 2014.

31.  Counterclaimant WestEnd is informed and believes and thereon alleges that from March 1, 2015 to the present, DSI and DRL continue to operate the DRM Modules or some version thereof  for themselves and their customers, using some or all of the Copyrighted Works or some derivation thereof, and continue to use and license the Copyrighted Works, without any right to do so.   None of the DRM Modules can function without the source code contained in the Copyrighted Works or derivation thereof. Counterclaimant WestEnd is informed and believes and thereon alleges that since February 28, 2015, DSI and DRL have continued to market the DRM Software and to make derivative works of the Copyrighted Works from time to time without authorization from Counterclaimant WestEnd.

32.  As of the date of filing of the original Cross-complaint, DSI and DRL continued to place on their customer's websites part of the Copyrighted

Robert Nolan Conrad, A Law Corporation

Works, as described in subparagraph 26(b) above, and as reflected on Exhibit B.

33.  Through their conduct averred herein, Counter-defendants, and each of them, have infringed and/or are guilty of contributory copyright infringement of the registered copyright of WestEnd in the WestEnd Software in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

34.  Counter-defendants' acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to the rights of Counterclaimant WestEnd.

35.  As a direct and proximate result of said infringement by Counter-defendants, counter-defendants have profited and WestEnd has been damaged in an amount to be proven at trial.

36.  WestEnd is also entitled to Counter-defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

37.  Counterclaimant further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

38.  As a direct and proximate result of the foregoing acts and conduct, WestEnd has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. WestEnd is informed and believes and on that basis alleges that unless enjoined and restrained by this Court, Counter-defendants will continue to infringe WestEnd's rights in the WestEnd Software. WestEnd is entitled to preliminary and permanent injunctive relief to restrain and enjoin Counter-defendants' continuing infringing conduct.

///

///

///

Robert Nolan Conrad, A Law Corporation

**SECOND CAUSE OF ACTION**

(Action for Breach of Written Settlement Agreement against DSI and DRL)

39.  Counterclaimant realleges and incorporates herein by reference all of the allegations contained in paragraph 1 through 35, inclusive.

40.  On May 28, 2014, WestEnd, Rakocevic, DSI, DRL and Malysz all entered into the Settlement Agreement.

41.  Counterclaimant has performed all of the conditions, covenants and promises required to be performed by it in accordance with the terms and conditions of the Settlement Agreement.

42.  DSI and DRL each breached the terms of the Settlement Agreement by not paying to WestEnd the Minimum Fee of $21,712.46 per month beginning March 28, 2015 through and including August 28, 2015, or any payments due thereafter under in paragraph 2(b)(i) of the Settlement Agreement.

43.  WestEnd has notified DSI and DRL in writing of said breach, has provided them with at leave seven days to cure the same, but they failed to do so.  WestEnd has notified each of them that WestEnd has declared a default of the Settlement Agreement, all as provided by the Settlement Agreement.

44.  There was due, owing and unpaid the sum of $130,274.76 as of September 22, 2015, plus interest on the principal portion, as allowed by law.

45.  As a proximate result of the breach and default by Counter-defendants DSI and DRL, Counterclaimant has been damaged in the minimum sum of $130,274.76, and in addition, the amount of each payment of $21,712.46 due from DSI to WestEnd beginning September 28, 2015 and thereafter, but unpaid at the time of trial, according to proof.

///

///

///

Robert Nolan Conrad, A Law Corporation

## **THIRD CAUSE OF ACTION**

(Action for Breach of License Agreement and for Injunctive Relief

against Counter-defendant DSI)

46. Counterclaimant realleges and incorporates herein by reference all of the allegations contained in paragraph 1 through 45, inclusive.

47. On May 28, 2014, WestEnd and DSI entered into the License Agreement. On February 18, 2015, DSI terminated its license to the WestEnd Software. (Exhibit A)

48. Counterclaimant has performed all of the conditions, covenants and promises required to be performed by it in accordance with the terms and conditions of the Settlement Agreement and License Agreement.

49. Sections 2.6, 5.3, 9.1 and 9.2 of the License Agreement provide in relevant part:

Section 2.6 "Restrictions on Use. * * * "(d) to the maximum extent permitted under applicable law, DSI will not, and will not allow any third party to, copy, manufacture, rename files of, modify, customize, translate, localize, decompile, disassemble, decrypt, reverse engineer, attempt to derive source code or algorithms from, remove any proprietary notices from, or create any derivative work based on, the WestEnd Software;"

Section 5.3 Termination by Notice by DSI. DSI may terminate this License Agreement if the following condition is satisfied: DSI shall have the right at any time upon at least ten (10) days' advance written notice to WestEnd prior to the end of any quarter to terminate both its license for the WestEnd Software hereunder and its obligation to pay any future Continuation Fee (an "Early Termination"). Upon such termination DSI shall provide a written certification from an officer of DSI that it no longer uses

Robert Nolan Conrad, A Law Corporation

14

the WestEnd Software for any purpose, and all copies have been destroyed or removed from its servers (except for any copy needed for archive purposes only.)

9.  Confidentiality of Proprietary Information.

Section 9.1 Acknowledgment. DSI hereby acknowledges that it has been exposed to confidential and proprietary information belonging to WestEnd. "Proprietary Information" includes, whether in written, graphic or machine-readable form, the WestEnd Software and the WestEnd IP.

Section 9.2 "Covenant Not to Disclose. DSI hereby agrees that (i) the obligations to keep the Proprietary Information confidential as described herein will continue in perpetuity irrespective of the status of this License Agreement, and (ii) it will not disclose WestEnd's Proprietary Information to any person or entity, except to its own employees having a "need to know"; * * * . DSI will use at least the same degree of care in safeguarding WestEnd's Proprietary Information as it uses in safeguarding its own Proprietary Information, but in no event will DSI use less than due diligence and reasonable care.  A violation of this section 9 shall be a material breach of this Agreement.  [Section 9.1 defined "Proprietary Information" as including the WestEnd Software.]

50.  Counterclaimant is informed and believes and thereon alleges that in 2014 and thereafter, DSI breached sections 2.6 and 9.2 of the License Agreement by providing the object code of the WestEnd Software to the Medora Counter-defendants for the purpose of decompiling, disassembling, decrypting, and reverse engineering the WestEnd Software and creating derivative works thereof.

51.  Counterclaimant is informed and believes and thereon alleges that

15

DSI also breached the License Agreement by:

(a)  by disclosing the WestEnd Software to the Medora Counter-defendants for the purpose of copying, manufacturing, renaming files of, modifying, customizing, decompiling,  disassembling, decrypting, reverse engineering, and attempting to derive source code and algorithms from, and creating derivative work based on the WestEnd Software.

(b)  continuing to use, distribute, license and creating or developing a derivative work based on the WestEnd Software, as either object code or source code.

52.  As a proximate result of the foregoing breaches, Counterclaimant has been damaged in an amount according to proof, but not less than an amount equal to all money received by DSI from its customers from and after March 1, 2015.

53.  Counterclaimant WestEnd is informed and believes and thereon alleges that it has no adequate remedy at law resulting from the continued use of the WestEnd Software, either as object code or source code after DSI's termination of its license for the object code for the WestEnd Software, and it may be impossible for WestEnd to determine the precise amount of damages which it will suffer if DSI and DRL continue to use the WestEnd Software. WestEnd is informed and believes and thereon alleges that unless enjoined and restrained by this Court, Counter-defendants DSI and DRL will continue to use the unlicensed WestEnd Software, either as object code or source code. WestEnd is entitled to preliminary and permanent injunctive relief to restrain and enjoin said Counter-defendants' continuing this conduct in breach of the License Agreement.

///

///

///

Robert Nolan Conrad, A Law Corporation

**FOURTH CAUSE OF ACTION**

(Action for Misappropriation of Trade Secrets under

Cal. Civil Code § 3426.1(b)(2)(B)(ii) and/or (iii) against all Counter-defendants)

54.  Counterclaimant realleges and incorporates herein by reference all of the allegations contained in paragraph 1 through 53, inclusive.

55.  The WestEnd Software contains proprietary software code that was so recognized by Counter-defendants DSI, DRL and Malysz in Sections 2.6 and 9.2 of the License Agreement attached to the Settlement Agreement, to which all of them were parties.  The Medora Counter-defendants knew or should have known that the source code for the WestEnd Software was proprietary and had acquired the WestEnd Software from persons they knew or reasonably should have known owed a duty to WestEnd to maintain the information in secrecy.

56.  At all times herein mentioned WestEnd is and has been the sole and exclusive legal owner of that portion of the WestEnd Software written by or for WestEnd.

57.  The source code of the WestEnd Software written by or for WestEnd is confidential and is not generally known to the public and provides WestEnd with a competitive advantage.  WestEnd's source code to the WestEnd Software has economic value in that with using that code, DSI from 2007 through 2014, DSI, by its own admission, became a leader in providing consumer licensing software to major corporations.

58.  DSI and DRL has recognized the value of just the object code of the WestEnd Software by, among other things, agreeing to pay WestEnd for the use thereof an annual fee of $75,000 for ten years, unless they ceased using the WestEnd Software.

59.  WestEnd has made reasonable efforts under the circumstances to insure that source code to the WestEnd Software remained a secret by doing the

Robert Nolan Conrad, A Law Corporation

things previously alleged.  Such information derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

60.  WestEnd protected its proprietary and trade secrets encompassed in the WestEnd Software as alleged in paragraph 21 above.  At no time did WestEnd ever provide or allow anyone to provide the source code of the WestEnd Software to any of the counter-defendants.

61.  The only business of DSI was and is to provide licenses to companies seeking the functionality of the WestEnd Software, proprietary software created by WestEnd.  Although WestEnd sold all of its rights to the DRM Modules to DSI, the DRM Modules could not and cannot run or operate without WestEnd's proprietary code contained in the WestEnd Software.

62.  The Medora Counter-defendants knew or should have known that they had acquired the object code of the WestEnd Software under circumstances giving rise to a duty to maintain its secrecy or limit its use under Cal. Civil Code § 3426.1(b)(2)(B)(iii), and/or derived from or through a person who has such a duty under Cal. Civil Code § 3426.1(b)(2)(B)(ii).  Nevertheless, the Medora Counter-defendants determined the source code of the WestEnd Software and disclosed this information to DSI, DRL and Malysz, acting in concert with them.

63.  Counter-defendants DSI, DRL and Malysz acquired the above-described information while owing to WestEnd the duty to maintain the information in secrecy.  Counter-defendants, and each of them, subsequently used this information in connection with the business activities of DSI and DRL, in a manner adverse to WestEnd's business interests.

64.  Counterclaimant is informed and believes and thereon alleges that sometime in or after June 2014, the Medora Counter-defendants acquired knowledge of WestEnd's trade secrets, disclosed said trade secrets to Malysz,

Robert Nolan Conrad, A Law Corporation

18

DSI and DRL, which or who, in turn, used and are using WestEnd's trade secrets without WestEnd's express or implied consent.

65. Counterclaimant is informed and believes and thereon alleges that in or about June 2014 and thereafter, DSI, knowing that it was prohibited from providing the object code of the WestEnd Software to anyone other than its own employees on a "need to know" basis, Counter-defendants, and each of them, in breach of DSI's obligations to protect the WestEnd object code from all third parties and thereby maintain the secrecy of the WestEnd Software, acted in concert to make the object code of the WestEnd Software available to the Medora Counter-defendants for the purpose of engaging in those acts set forth in paragraph 22 above in order to determine the source code, algorithms, and procedures constituting the same, some or all of which the Medora Counter-defendants then incorporated into the DRM Modules so that the DRM Modules could continue to run and/or operate without the apparent use of the WestEnd Software.

66. Counterclaimant WestEnd is informed and believes and thereon alleges that from in or about June 2014 and continuing to the present time Counter-defendants, and each of them, misappropriated the above-described trade secrets of WestEnd and used all or some of the same and continue to use the same in connection with the business operations of DSI and DRL.

67. As a proximate result of the misappropriation of WestEnd's trade secrets, WestEnd has suffered actual damages, according to proof, and Counter-defendants, and each of them, were unjustly enriched by DSI continuing to offer software and services to his customers from and after March 1, 2015, and from any other amounts received by any of the Counter-defendants.

68. Each of the acts of misappropriation was done willfully and maliciously by Counter-defendants, thereby entitling WestEnd to exemplary damages to be proven at trial pursuant to California Civil Code § 3426.3(c).

19

69.  As a direct and proximate result of the Counter-defendants' misappropriation of Counterclaimant's trade secrets, the Counter-defendants have been unjustly enriched, and WestEnd has sustained damages in an amount to be proven at trial.  WestEnd also has suffered irreparable harm as a result of the Counter-defendants' activities, and will continue to suffer irreparable injury that cannot be adequately remedied at law unless the Counter-defendants, and their officers, agents and employees, and all other persons acting in concert with them, are enjoined from engaging in any further acts of misappropriation.

WHEREFORE, Counterclaimant WestEnd prays for judgment against Counter-defendants, and each of them, jointly and severally, as follows:

**ON THE FIRST CAUSE OF ACTION**

1.  For damages in such amount as may be found, or as otherwise permitted by law.

2.  For an accounting of, and the imposition of constructive trust with respect to Counter-defendants' profits attributable to their infringement, including both direct profits and indirect profits in the form of sales, convoyed sales, and licensing of the Copyrighted Works and derivatives thereof, pursuant to 17 U.S.C. § 504;

3.  For entry of relief impounding and/or destruction of all infringing articles and derivatives thereof and all computer servers that contain the Copyrighted Works, pursuant to 17 U.S.C. § 503;

4.  For a preliminary and permanent injunction pursuant to 17 U.S.C. § 502 prohibiting Counter-defendants, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them from continuing to infringe Counterclaimant WestEnd's copyright in the Copyrighted Works.

5.  For a finding that the infringement by Counter-defendants, and each of them, was willful, and for an award that accounts for its willful

infringement, pursuant to 17 U.S.C. § 504;

    6.  For prejudgment interest according to law.

**ON THE SECOND CAUSE OF ACTION**

    7.  For damages in the sum of $130,274.76 as of the date of filing the original cross-complaint in this action;

    8.  For additional damages, the amount of each payment of $21,712.46 due from DSI to WestEnd beginning September 28, 2015 and thereafter, but unpaid at the time of trial, according to proof.

**ON THE THIRD CAUSE OF ACTION**

    9.  For damages, according to proof;

    10.  For a preliminary and permanent injunction prohibiting Counter-defendants, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them from continuing to use, distribute, license and/or creating or developing a derivative work based on the WestEnd Software, as either object code or source code.

**ON THE FOURTH CAUSE OF ACTION**

    11.  For a temporary restraining order, preliminary and permanent injunction prohibiting Counter-defendants, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them from continuing to use any of the source code or any modification thereof from WestEnd's Core Software;

    12.  For general damages and an amount necessary to prevent the unjust enrichment of each of the Counter-defendants, according to proof;

    13.  For exemplary damages, according to proof;

**ON ALL CAUSES OF ACTION**

    14.  For Counterclaimant WestEnd's attorneys' fees and disbursements in this action, as allowed by either contract or statute.

21

Robert Nolan Conrad, A Law Corporation

15.  For costs of suit incurred herein; and

16.  For such other and further relief as the Court may deem just and proper.

DATED: November 24, 2015    ROBERT NOLAN CONRAD,
                            A LAW CORPORATION


By  /s/ Robert N. Conrad
    Robert N. Conrad
    Attorney for Counterclaimant and
    defendant WestEnd Software, Inc. and
    Defendant Zeljko Rakocevic

## **DEMAND FOR JURY TRIAL**

Counterclaimant WestEnd Software, Inc. demand trial by jury on all issues triable at law.

DATED: November 24, 2015    ROBERT NOLAN CONRAD,
                            A LAW CORPORATION


By  /s/ Robert N. Conrad
    Robert N. Conrad
    Attorney for Counterclaimant and
    defendant WestEnd Software, Inc. and
    Defendant Zeljko Rakocevic

Robert Nolan Conrad, A Law Corporation